IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CARRIE QUARLES,**<br>    **Plaintiff,**<br><br>            v.<br><br>**POLLIN/MILLER HOSPITALITY STRATEGIES, INC. d/b/a MODUS HOTELS BY PM GROUP, et al.,**<br>    **Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO.  24CV1027** |

## MEMORANDUM OPINION

Plaintiff Carrie Quarles seeks money damages from her employer, Defendant Pollin/Miller Hospitality Strategies, Inc., doing business as Modus Hotels by PM Group (hereinafter "Modus"), and several hotel supervisors for violations of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. §§ 951 *et seq.*  Defendants now move to dismiss her claims of hostile work environment and retaliation, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  For the reasons that follow, their motion will be granted.

I.    **FACTUAL BACKGROUND**[2]

Quarles is a Black woman who was previously employed as a Guest Service Agent at Philadelphia hotel operated by Modus.  She was one of the few Black employees working at the hotel's front desk, and she was generally liked by her colleagues.  At the time of her termination, Quarles was living in the hotel.  Specifically, the hotel's general manager, Neal Gawad, had

---

[1] The Amended Complaint also presses claims for disparate treatment and discrimination, which Defendants do not seek to dismiss.

[2] The following recitation is adopted from the Amended Complaint, the well-pled allegations of which are accepted as true in this posture.  *See Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

1

offered her a room rent-free for one month, followed by one month at the employee rate, and then the best-available rate thereafter.  Quarles alleges that a white supervisor, Jennifer Ottaviano, had been allowed to live rent-free in the largest room in the hotel for seven months during her relocation.  Quarles had complained to Ottaviano that this disparate treatment was "Giving Discrimination."

About one month after Quarles made the "Giving Discrimination" comment to Ottaviano, she was terminated following an incident that took place at the hotel.  As Quarles described it in her EEOC charge:

> I returned to the hotel after celebrating my birthday. I felt sick after having several drinks, and subsequently vomited in a trash can in the lobby area. While management acknowledged there were no guests in the lobby, they stated that it was unacceptable for me to come back to the hotel intoxicated.

While Quarles does not dispute that this incident took place, she states that she was off-duty at the time.  Additionally, Quarles alleges that Ottaviano had behaved similarly during her stint living at the hotel without facing any disciplinary consequences.

## II.   LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading

of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief."  *Id.* at 210-11.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Document "integral to or explicitly relied upon in the complaint" may also be considered without converting a motion to dismiss into one for summary judgment.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted and emphasis removed).  In Title VII litigation, this includes the administrative charge filed with the EEOC—"an undisputedly authentic document" on which "plaintiff's claims are based."  *Lowenstein v. Catholic Health East*, 820 F.Supp.2d 639, 645 n.2 (E.D. Pa. 2011).

### III. DISCUSSION

Quarles's Amended Complaint presses four claims: (1) hostile work environment, in violation of Title VII; (2) disparate treatment, in violation of Title VII; (3) retaliation, in violation of Title VII; and, (4) discrimination, disparate treatment, hostile work environment, and retaliation, in violation of the PHRA.  Defendants move to dismiss her claims for hostile work environment and retaliation, primarily arguing that Quarles failed to administratively exhaust these claims by including them in the charge she filed with the EEOC.  In the alternative, they argue that these claims are inadequately pled in Quarles's Amended Complaint.

#### A. Administrative Exhaustion

Before bringing a Title VII claim, "a plaintiff must file a charge of discrimination with

the EEOC and procure a notice of the right to sue." *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013). "The same is required to bring a claim under the PHRA." *Id.* This EEOC charge sets the parameters for any subsequent civil action in federal court; any claims of discrimination must fall "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996). In other words, the allegations in a plaintiff's Title VII complaint must be "similar or reasonably related to those alleged in the EEOC charge." *Fucci v. Graduate Hosp.*, 969 F.Supp. 310, 315 (E.D. Pa. 1997).

Defendants argue that because Quarles's EEOC charge did not include claims of hostile work environment or retaliation, she is barred from bringing those claims in this action. But the Third Circuit has repeatedly instructed that the "preliminary requirements for a Title VII action are to be interpreted in a nontechnical fashion." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976). Particularly when, as in this case, a plaintiff was pro se at the time she filed her EEOC charge, "the scope of the original charge should be liberally construed." *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 965 (3d Cir. 1978). Here, Quarles stated in her EEOC charge that she and other employees had lodged repeated complaints about her supervisor's "demeanor and treatment of guests and other Guest Service Agents"; that her supervisor's behavior had already led to the resignation of another Black front desk agent; and that she was fired after raising these concerns. And, to put a point on it, Quarles specifically stated an interview with EEOC staff that the hotel's manager had "consistently created a hostile work environment." Particularly when construed generously, as an EEOC charge must be, these allegations were sufficient to administratively exhaust her hostile work environment and retaliation claims.

4

### B. Failure to State a Claim

Nevertheless, these claims are inadequately pled and must, accordingly, be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

To establish a prima facia claim for hostile work environment under Title VII, "a plaintiff must show: (1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability." *Aman v. Cort Furniture Retail Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996).[3] The Supreme Court has emphasized that "whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Here, Quarles has failed to adequately plead facts showing that she faced discrimination that was sufficiently severe or pervasive. "In order for Plaintiff to state a hostile work environment claim, the workplace must be 'permeated with discriminatory intimidation, ridicule and insult.'" *Gharzouzi v. Nw. Human Services of Pa.*, 225 F.Supp.2d 514, 536 (E.D. Pa. 2002) (quoting *Harris*, 510 U.S. at 21). While a single "extreme isolated act of discrimination" can sometimes be enough, *Castleberry v. STI Group*, 863 F.3d 259, 265 (3d Cir. 2017), "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to

---

[3] Quarles's PHRA claims are evaluated coextensively with her Title VII claims. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006).

discriminatory changes in the 'terms and conditions of employment.'" *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 271 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 788 (2001)).

While Quarles argues that she was "regularly treated with hostility by her supervisors," the Amended Complaint only identifies four specific incidents. First, she alleges that she and her white supervisor, Ottaviano, were provided temporary accommodations from their employer, but that Ottaviano got a better room at a lower price. Second, she alleges that on one occasion, Ottaviano commented that "that Plaintiff must be on 'CPT,' which she says stands for 'Colored People Time.'" Third, she alleges after the hotel received an anonymous racist letter in the mail, the general manager, Neal Gawad, was overly dismissive when she reported her concerns about the letter to him. And fourth, she alleges that although she and Ottaviano both vomited in the hotel lobby area, only she was disciplined for this behavior. Even assuming that each of these four incidents was the result of "intentional discrimination because of race," *Aman*, 85 F.3d at 1081, they collectively fall well-short of the kind of severe or pervasive discrimination required to state a claim for hostile work environment. Even when these allegations are construed in the light most favorable to Quarles, they fail to show that show that she was subject to workplace conditions that "amount[ed] to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

Quarles's claim for retaliation likewise fails to plausibly allege liability. "To establish discriminatory retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995). Here, Quarles alleges that she was fired after complaining to hotel management about the disparity in

the rooms provided to her and Ottaviano.  Even assuming that this complaint was a protected activity, Quarles has alleged no plausible causal connection between that complaint and her subsequent termination.

As Defendants correctly argue, "Title VII retaliation claims must be proved according to traditional principles of but-for causation."  *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 258 (3d Cir. 2017) (quoting *Univ. of Texas v. Sw. Med. Center v. Nassar*, 570 U.S. 338, 360 (2013)).  And while a plaintiff's burden at the pleading stage is not high, a plaintiff's allegations must at least support an inference that "[her] protected activity was the likely reason for her termination."  *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 179 (3d Cir. 1997).  Here, the sole basis Quarles identifies for inferring causation is the "temporal proximity" between her complaint and termination.  But, "[i]t is well-established that 'temporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not unusually suggestive.'"  *Outten v. Genesis Health Care*, 2014 WL 3964918, at *12 (E.D. Pa. Aug. 12, 2014) (collecting cases).  The Amended Complaint alleges that more than one month passed between these two events, and "[b]y itself, without further evidence of a causal link, 'one month . . . is not an unusually suggestive amount of time.'"  *Id.* (quoting *Schummer v. Black Bear Distrib., LLC*, 965 F.Supp.2d 493, 498-99 (D.N.J. 2013)).

An appropriate order follows.

                **BY THE COURT:**

                **/S/WENDY BEETLESTONE, J.**

                _____
                **WENDY BEETLESTONE, J.**